**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DIANE ZION, *Individually and as* )
*Personal Representative of the Estate of* )
*Nicholas Haniotakis*, TAYLOR )
HANIOTAKIS, NIKKI HANIOTAKIS, )
and BENJAMIN HANIOTAKIS, )
                            )
          Plaintiffs, )
                            )
     v. )     **Civil Action No. 09-383**
                            )
TROOPER SAMUEL NASSAN, SGT. )
TERRENCE DONNELLY, LT. DAVID )
HECKMAN, CAPT. SHELDON )
EPSTEIN, COMMISSIONER FRANK )
PAWLOWSKI, and MAJOR TERRY )
SEILHAMER, )
                            )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

**Conti, District Judge**

**I.    Introduction**

      Pending before the court are four separate motions filed by Trooper Samuel Nassan

("Nassan"), who is a defendant in this action. (ECF Nos. 122, 141, 144, 160.) For the reasons

that follow, the first motion for reconsideration and the second motion for sanctions (ECF Nos.

122, 144) will be denied; the second motion for reconsideration (ECF No. 160) will be granted to

the extent that it seeks the preservation of the materials submitted for *in camera* review and

denied in all other respects; and the motion for an order declaring "certain allegations set forth in

Nassan's answer" to be deemed admitted (ECF No. 141) will be granted to the extent that it

seeks an extension of the deadline for the filing of motions for judgment on the pleadings,

granted *in part* with respect to paragraph 28 of Nassan's "additional qualified immunity allegations" (and the plaintiffs' responses thereto), and denied in all other respects.

## II.    Background

This case arises out of the March 15, 2009, shooting death of Nicholas Haniotakis ("Haniotakis") on the South Side of Pittsburgh, Pennsylvania.  (ECF No. 54 at ¶¶ 10, 15.) Plaintiff Diane Zion ("Zion") is the duly appointed personal representative of Haniotakis' estate. (*Id.* ¶ 2.)  Plaintiffs Taylor Haniotakis ("Taylor"), Nikki Haniotakis ("Nikki") and Benjamin Haniotakis ("Benjamin") are the children of Haniotakis.  (*Id.* ¶ 3.)  Nassan is a police officer employed by the Pennsylvania State Police ("PSP").  Sergeant Terrence Donnelly ("Donnelly") is a police officer employed by the City of Pittsburgh Bureau of Police ("Police Bureau").  (*Id.* ¶ 5.)  Colonel Frank Pawlowski ("Pawlowski") serves as the Pennsylvania State Police Commissioner.  (*Id.* ¶ 6.)  In this capacity, Pawlowski commands the PSP's 4,600 officers.  (*Id.*) Major Terry Seilhamer ("Seilhamer"), an Area Commander for the PSP, is responsible for supervising three different "troops."  (*Id.* ¶ 7.)  Among the troops under Seilhamer's command is Troop B.  (*Id.*)  Nassan works as a member of Troop B.  (*Id.*)  Captain Sheldon Epstein ("Epstein") serves as Troop B's Commanding Officer.  (*Id.* ¶ 8.)  He is directly under Seilhamer in the PSP's chain of command.  (*Id.*)  Lieutenant David Heckman ("Heckman"), a station commander for the PSP, is Nassan's direct supervisor.  (*Id.* ¶ 9.)

Although the parties contentiously dispute the factual circumstances surrounding the incident in question, it is undisputed that Haniotakis was fatally shot in the back by either Nassan or Donnelly in the early morning hours of March 15, 2009.  The plaintiffs[1] commenced this § 1983 action against the defendants on April 1, 2009, contending, *inter alia*, that Nassan and

---

[1] Haniotakis' two sisters, Rachel Takes ("Takes") and Dena Zouloufos ("Zouloufos"), were also named as plaintiffs when the original complaint was filed.   (ECF No. 1 ¶ 3.)

Donnelly violated Haniotakis' rights under the Fourth and Fourteenth Amendments to the United States Constitution. (ECF No. 1 ¶¶ 35-47.) It was alleged that Nassan and Donnelly unconstitutionally "seized" Haniotakis by shooting him after he had already "stopped his vehicle," and that a bullet fired by Nassan struck Haniotakis in the back and took his life. (*Id.* ¶ 15.) The plaintiffs further alleged that, at the time of the shooting, Haniotakis "posed no threat of harm" to the officers or bystanders, and that the officers were "protected by considerable distance and barriers between Haniotakis and themselves." (*Id.* ¶¶ 17-18.)

Nassan and the remaining PSP defendants[2] filed separate motions to dismiss the plaintiffs' complaint on August 26, 2009. (ECF Nos. 19, 21.) Nassan argued that the plaintiffs failed to allege properly a constitutional violation, and that he was entitled to qualified immunity. (ECF No. 20.) The other PSP defendants contended, *inter alia*, that the complaint did not contain sufficient allegations of their personal involvement in the shooting to warrant the imposition of liability under 42 U.S.C. § 1983. (ECF No. 22 at 3-5.) At the request of the defendants, discovery was stayed pending the resolution of the motions to dismiss. (ECF No. 42.)

A hearing was conducted on November 19, 2009. Counsel for the plaintiffs argued that the court could not dismiss the complaint without holding that it was "no longer unlawful for police officers to shoot people in cars during a traffic stop." (ECF No. 82 at 59.) Nassan's counsel characterized the allegation that Haniotakis "stopped his vehicle" before the shooting as a false statement, claiming that the shooting actually occurred during the course of a "vehicular pursuit." (*Id.* at 64.) The plaintiffs' counsel was accused of deliberately "withholding facts" surrounding the events in question for the purpose of overcoming the defendants' qualified immunity at the pleadings stage. (*Id.* at 67.) The court advised the plaintiffs' counsel that the

[2] The court uses the term "PSP defendants" because Donnelly never filed a motion to dismiss. (ECF No. 82 at 4.)

allegation concerning "considerable distance and barriers" between Haniotakis' vehicle and the approaching officers was not sufficiently clear to facilitate a meaningful evaluation of the factual allegations. (*Id.* at 88-91.) The plaintiffs were instructed to file an amended complaint. (*Id.* at 92.) The defendants were informed that the filing of the amended complaint would moot their motions to dismiss. (*Id.* at 93.)

The plaintiffs filed their amended complaint on December 3, 2009. (ECF No. 54.) They again alleged that Nassan and Donnelly shot Haniotakis after he had already "stopped his vehicle." (*Id.* ¶ 15.) It was further alleged that police officers were typically trained "to use their vehicle as a barrier when needed or necessary for protection," and that a police vehicle could have been used as a "barrier" to protect Nassan and Donnelly at the time of the shooting. (*Id.* ¶¶ 17-18.) The amended complaint also included more detailed allegations concerning the alleged actions and omissions of the remaining defendants in relation to their supervision of Nassan. (*Id.* ¶¶ 6-9.)

On December 29, 2009, Nassan filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. (ECF No. 63.) He argued that Haniotakis did not actually "stop" his vehicle before the shooting, that the shooting was necessitated by Haniotakis' use of the vehicle as a "continuing weapon of harm," and that the plaintiffs were falsely alleging the factual predicate of a vehicular "stop" in order to avoid the dismissal of the amended complaint at the pleadings stage. (*Id.* ¶ 46.) Nassan's motion described the allegations contained in the amended complaint as a "false depiction of events." (*Id.* ¶ 47.)

Nassan, Donnelly and the remaining PSP defendants filed three separate motions to dismiss on January 26, 2010. (ECF Nos. 70, 71, 73.) In a memorandum opinion and order dated July 23, 2010, the court denied the motion for sanctions and the three motions to dismiss. (ECF

No. 86.) The defendants were directed to file answers to the amended complaint on or before August 13, 2010, and the plaintiffs were instructed to reply to the factual allegations contained in the answers within the ensuing twenty-one days.[3] (ECF No. 86 at 41.) The defendants separately filed three motions for reconsideration in August 2010. (ECF Nos. 87, 88, 89.) The motions were denied in a memorandum opinion and order dated October 21, 2010. (ECF No. 94.) The court ordered the defendants to file their answers on or before November 11, 2010. (*Id.* at 13.) The plaintiffs were again directed to reply to the defendants' factual allegations within the following twenty-one days. (*Id.*) The court's ruling was issued without prejudice to the ability of the defendants to move for a judgment on the pleadings after receiving the plaintiffs' replies. (*Id.*)

Donnelly filed his reply on November 10, 2010. (ECF No. 96.) The remaining defendants filed their replies one day later. (ECF Nos. 98, 99.) The defendants all denied that Haniotakis' vehicle "stopped" prior to the shooting. (ECF Nos. 96, 98, 99 ¶ 15.) They alleged that Haniotakis' vehicle, which was described as a sport utility vehicle ("SUV"), "stopped" only after crashing into a parked car during the course of a high-speed chase. (*Id.*) The defendants alleged that Haniotakis placed the SUV in "reverse" after the collision for the purpose of backing it into Nassan, and that he subsequently caused the SUV to move forward, thereby placing Donnelly in danger. (*Id.*) The defendants indicated that Nassan and Donnelly discharged their weapons only to protect themselves and others from serious bodily injury. (*Id.* ¶¶ 15, 19.) Nassan's answer included "additional qualified immunity allegations." (ECF No. 98 at 14-22.)

---

[3] Federal Rule of Civil Procedure 7(a)(7) permits a court to order "a reply to an answer." FED. R. CIV. P. 7(a)(7). The United States Court of Appeals for the Third Circuit has recognized this option as a useful tool for facilitating the evaluation of a qualified-immunity defense at the pleadings stage. *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006).

The plaintiffs responded on November 23, 2010, by filing a motion to strike the "additional qualified immunity allegations." (ECF No. 103.)

The plaintiffs replied to the answers filed by Donnelly and the supervisory PSP defendants on December 1, 2010. (ECF Nos. 106 , 108.) They replied to Nassan's answer on December 2, 2010. (ECF No. 113.) In their replies, the plaintiffs admitted that Haniotakis' SUV collided with a parked, unoccupied vehicle before coming to a "stopped" position. (ECF Nos. 106, 108 , 113 ¶ 15.) Nevertheless, they denied that the SUV posed a threat to the officers and bystanders at the time of the shooting. The plaintiffs went on to allege that Nassan and Donnelly subsequently shot Haniotakis while the SUV was "stopped" at an intersection, and that the officers were fifty yards behind the SUV at the time of the shooting. (*Id.*) These allegations were specifically attributed to accounts which were provided by witnesses to the incident. (*Id.*)

On December 16, 2010, Nassan filed another motion for reconsideration, asking the court to reverse the July 23, 2010, decision denying his request for sanctions. (ECF No. 122.) In support of his motion, Nassan argued that the plaintiffs' counsel purposefully mischaracterized the collision between the SUV and the unoccupied vehicle as a "traffic stop" in order to defeat his entitlement to qualified immunity. (*Id.* at 4.) That same day, Nassan filed a motion requesting limited discovery relating to the plaintiffs' basis for contending that the SUV was in a "stopped" position at the time of the shooting. (ECF No. 123.) The plaintiffs filed their response to Nassan's motion for limited discovery on December 30, 2010. (ECF No. 127.) In their response, the plaintiffs stated that witnesses to the shooting provided accounts supporting their allegations. (*Id.* at 5.)

The court orally denied the plaintiffs' motion to strike during the course of a hearing conducted on December 17, 2010. (ECF No. 125 at 30.) In order to provide the plaintiffs with a

fair chance to respond to Nassan's "additional qualified immunity allegations," the court ordered the defendants to turn over "investigative files" related to the case and afforded the plaintiffs an opportunity to have an expert view Haniotakis' SUV. (*Id.* at 30-31.)

The plaintiffs replied to Nassan's "additional qualified immunity allegations" on February 14, 2011. (ECF No. 138.) On March 15, 2011, Nassan moved for a determination that the plaintiffs "admitted" some of his allegations by filing ambiguous responses. (ECF No. 141.) Nassan filed a second motion for sanctions on March 25, 2011, accusing the plaintiffs' counsel of falsely claiming that Haniotakis was shot to death while sitting in a "stopped" vehicle. (ECF No. 144 ¶ 100.)

On May 2, 2011, the court partially granted Nassan's earlier motion for limited discovery. (ECF No. 158.) The plaintiffs were ordered to provide the defendants with the name, address and telephone number of "each person likely to have discoverable information," as well as "a description of the subject matter of that information." (*Id.*) They were further directed to submit to the court, for *in camera* review, "all witness statements relied upon in their response to the motion for limited discovery." (*Id.*) The motion for limited discovery was denied in all other respects. (*Id.*) The plaintiffs provided the court with access to their "witness statements" on May 10, 2011, in accordance with the order issued eight days earlier. (ECF No. 159.) Nassan filed a motion for reconsideration on May 17, 2011, seeking an order requiring the plaintiffs to provide the defendants with unredacted copies of the "witness statements" submitted to the court for *in camera* review. (ECF No. 160.)

## III.    Standard of Review

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.

1985)(citing *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 664 (N.D. Ill. 1983)). A motion for reconsideration is ordinarily granted only where there is "an intervening change in the controlling law," the presentation of "new evidence" that was not available at the time of the ruling in question, or a "need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Such a motion should typically address matters that the court has overlooked in rendering a prior decision. *Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa. 1993). A motion for reconsideration is not properly grounded in a desire to have a court "rethink" a decision that has already been made. *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D.Pa. 1998).

## IV. Discussion

### a. The Motions for Reconsideration and Sanctions (ECF Nos. 122, 144)

The present controversy can only be understood by reference to the legal principles underlying the claims asserted by the plaintiffs and the defenses raised by the defendants. The plaintiffs bring their federal constitutional claims pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. This statutory provision does not create substantive rights. *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980). A plaintiff cannot prevail in action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

The United States Supreme Court has explained that "Section 1983 is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976) (citing *Tenney v. Brandhove*, 341 U.S. 367 (1951)).  For this reason, the "qualified immunity" that was available to executive officials at common law may be invoked by executive officials sued under § 1983.  *Hafer v. Melo*, 502 U.S. 21, 28-29 (1991).  In this vein, state officials performing discretionary duties are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In order for a federal right to be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Qualified immunity is not only a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation. . . ."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Consequently, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(*per curiam*).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST., amend. IV.  The provisions of the Fourth Amendment are applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment.  *Cady v. Dombrowski*, 413 U.S. 433, 440 (1973).  "A Fourth Amendment 'seizure' occurs when there is a governmental

termination of movement through means intentionally applied." *Thompson v. Wagner*, 631

F.Supp.2d 664, 672 (W.D.Pa. 2008)(citing *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)).

A state official's use of deadly force to apprehend an individual constitutes a "seizure" within the

meaning of the Fourth Amendment. *Curley v. Klem*, 499 F.3d 199, 203 n.4 (3d Cir. 2007).

Since the Fourth Amendment proscribes only "unreasonable" seizures, the "pivotal question" in

a case such as this is whether the use of deadly force was *reasonable*. *Abraham v. Raso*, 183

F.3d 279, 288 (3d Cir. 1999).

In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court held that an officer's "use

of deadly force to prevent the escape of an apparently unarmed suspected felon" constitutes an

"unreasonable" seizure within the meaning of the Fourth Amendment unless it is *both* "necessary

to prevent the escape" *and* supported by "probable cause to believe that the suspect poses a

significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at

3. The Supreme Court made the following observations:

> The use of deadly force to prevent the escape of all felony
> suspects, whatever the circumstances, is constitutionally
> unreasonable. It is not better that all felony suspects die than that
> they escape. Where the suspect poses no immediate threat to the
> officer and no threat to others, the harm resulting from failing to
> apprehend him does not justify the use of deadly force to do so. It is
> no doubt unfortunate when a suspect who is in sight escapes, but the
> fact that the police arrive a little late or are a little slower afoot does
> not always justify killing the suspect. A police officer may not seize
> an unarmed, nondangerous suspect by shooting him dead.
>
> . . . Where the officer has probable cause to believe that the
> suspect poses a threat of serious physical harm, either to the officer
> or to others, it is not constitutionally unreasonable to prevent escape
> by using deadly force. Thus, if the suspect threatens the officer with
> a weapon or there is probable cause to believe that he has committed
> a crime involving the infliction or threatened infliction of serious
> physical harm, deadly force may be used if necessary to prevent
> escape, and if, where feasible, some warning has been given.

*Garner*, 471 U.S. at 11-12.  Twenty-two years later, in *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court declared that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment" even if the officer's course of action "places the fleeing motorist at risk of serious injury or death."  *Scott*, 550 U.S. at 386.  The parties dispute whether the actions of Nassan and Donnelly (*i.e.*, the shooting of Haniotakis) constituted an "unreasonable" seizure of the kind condemned in *Garner* or a "reasonable" seizure of the kind described in *Scott*.[4]

In the amended complaint, the plaintiffs make the following allegations:

10. On or about March 15, 2009 between the hours of 1:00 a.m. and 2:00 a.m.,  Nicholas Haniotakis was being followed by Nassan and Donnelly who claimed they were following Haniotakis' vehicle because it had a broken headlight.

11. Nassan and Donnelly radioed dispatch and informed them that they were  following a vehicle which they described for dispatch. They also provided the license plate number.

12. At all times material and relevant, Nassan and Donnelly did not know who was driving the subject vehicle.  Nassan and Donnelly possessed no information about the driver including his condition, state of mind, intentions or any other information.

13. At all times material and relevant, Defendants Nassan and Donnelly did not see the driver of the subject vehicle committing any violent felony or crime.

14. Upon information and belief, Nassan and Donnelly were instructed by dispatch and/or a superior officer to discontinue their pursuit of the Haniotakis vehicle.  Significantly, however, Defendants Nassan and Donnelly refused to follow those instructions and continued to follow the vehicle.

---

[4] These two categories of "seizures" are not always easy to separate.  The United States Court of Appeals for the Third Circuit recently explained that "[e]ven where an officer is initially justified in using force, he [or she] may not continue to use such force after it has become evident that the threat justifying the force has vanished."  *Lamont v. New Jersey*, 637 F.3d 177, 184 (3d Cir. 2011).  Thus, the resolution of this case may ultimately turn on factors other than whether Haniotakis' SUV "stopped" prior to the shooting.

15. Upon information and belief, when Mr. Haniotakis stopped his vehicle, Defendants Nassan and Donnelly exited the police vehicle with their weapons drawn. As they approached the vehicle they began to shoot multiple times in the direction of the driver thereby striking Mr. Haniotakis first in his extremities and then ultimately Defendant Nassan shot Mr. Haniotakis through the back thereby inflicting fatal injuries.

16. At all times material and relevant, Nicholas Haniotakis did not possess and/or brandish a weapon including a gun or a knife.

17. At all times material and relevant, Nicholas Haniotakis posed no threat of harm to the defendant officers and/or to anyone else at or near the scene of the shooting. The officers had been traveling in a police car. Police officers are taught to use their vehicle as a barrier when needed or necessary for protection. They are also taught to use distance because the more distance between themselves and persons they are pursuing, the more time they have to respond and/or react.

18. At all times material, the officers had their vehicle as a barrier if they chose to use it.

19. At all times material and relevant, neither Nassan nor Donnelly had any justifiable excuse or reason to discharge their weapons at Mr. Haniotakis, who was unarmed, was facing away from Nassan and Donnelly and did not pose a threat of harm to the officers or anyone else in the vicinity.

(ECF No. 54 ¶¶ 10-19.) The plaintiffs alleged that Haniotakis did not die immediately after being shot, and that he endured "tremendous pain and suffering" between the time of the shooting and the moment of his death. (*Id.* ¶¶ 20-21.)

The plaintiffs now admit that Haniotakis crashed the SUV into a parked car shortly before the shooting. (ECF Nos. 106, 108 , 113 ¶ 15.) They acknowledge that Haniotakis moved the SUV after the crash. (*Id.*) They maintain that he was shot from behind while the SUV was "stopped" at an intersection. (*Id.*) Nassan argues that the plaintiffs' counsel is in violation of Rule 11 for continuing to assert that Haniotakis' SUV was in a "stopped" position at the time of the shooting. (ECF No. 122 at 2.) He contends that the original and amended complaints were

crafted in a misleading way for the purpose of overcoming his entitlement to qualified immunity at the pleadings stage. (*Id.*) The crux of Nassan's argument is that he is entitled to qualified immunity under *Scott* because the shooting occurred during the course of a dangerous vehicular *chase* rather than after a routine traffic *stop*. (*Id.*)

Subsection (b) of Rule 11 provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b). Rule 11 "seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483-84 (3d Cir. 1987). The applicable standard for gauging an attorney's conduct under Rule 11 is objective "reasonableness under the circumstances." *Id.* at 482.

Nassan essentially contends that some of the averments contained in the original and amended complaints were included for the "improper purpose" of defeating his entitlement to qualified immunity at the pleadings stage, thereby subjecting him to the "burdens of litigation" that he is entitled to avoid. (ECF No. 122 at 10-14.) He argues that no "evidentiary support"

exists for the allegation that Haniotakis' SUV was in a "stopped" position when shots were fired. (*Id.*) Nassan further asserts that the plaintiffs' reply to his "additional qualified immunity allegations" contains "denials of factual contentions" that are not "warranted on the evidence." (ECF No. 144 ¶¶ 47-51.)

The court has twice relied on the allegation of a "stopped" vehicle as a basis for denying Nassan's assertion that he is entitled to qualified immunity at this stage. (ECF No. 86 at 16; ECF No. 94 at 11.) The question presently before the court is whether the plaintiffs' contention that the SUV was in a "stopped" position at the time of the shooting is so contrary to the findings of their counsel's reasonable "inquiry" that sanctions are warranted under Rule 11. That question must be answered in the negative.

The plaintiffs' *in camera* submission includes transcripts of interviews with individuals who are alleged to have witnessed the shooting. When questioned about the incident, one witness stated that Haniotakis' vehicle was "stopped" at an intersection at the time of the shooting, and that it moved across a street and into a telephone pole *after* bullets had shattered the window in the back of the vehicle. This witness' description of the incident was consistent with the view that Haniotakis had inadvertently caused the vehicle to accelerate by resting his foot on the gas pedal after being shot. A separate witness declared that the SUV was fifty yards in front of Nassan and Donnelly at the time of the shooting, and that the movement of the SUV had not placed the officers in danger. A third witness claimed that, after the shooting, police officers had actively prevented emergency medical personnel from addressing Haniotakis' medical needs. Regardless whether the statements provided by these witnesses were "true" or "false," they provided the plaintiffs' counsel with an objectively reasonable basis for including the challenged averments in the amended complaint. (ECF No. 54 ¶¶ 10-19.) The statements

provided the plaintiffs' counsel with an objectively reasonable basis for denying the relevant "qualified immunity allegations" made by Nassan. (ECF No. 138 ¶¶ 31-47.) The imposition of sanctions would clearly be inappropriate under these circumstances. Nassan's first motion for reconsideration and second motion for sanctions will be denied. (ECF Nos. 122, 144.)

    b.   <u>Motion for reconsideration of denial of limited discovery (ECF No. 160)</u>

Nassan's second motion for reconsideration concerns the court's partial denial of his motion for limited discovery. (ECF No. 160.) He complains that the court's order did not indicate whether the witness statements presented by the plaintiffs' counsel "will be provided to the defense for Rule 11 purposes." (*Id.* at 2-3.) Having reviewed the statements *in camera*, the court already determined that no valid ground for sanctions exists. This determination essentially moots Nassan's alleged need to see the statements "for Rule 11 purposes."

At the pleadings stage, the plaintiffs are not required to *prove* the truth of their allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)(observing that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder"). Rule 11 "is not a bargaining chip to be flashed cavalierly in hopes of securing a strategic advantage." *Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 538 (S.D. Ala. 2007). Nassan cannot use Rule 11 as a weapon to force the plaintiffs to make evidentiary showings that need not be made at this time. Moreover, he cannot show that he "has substantial need for the [desired] materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii). There is no reason why Nassan cannot obtain the relevant information by engaging in the very process of discovery that he seeks to avoid. It is true that a defendant

raising the defense of qualified immunity is "entitled to dismissal before the commencement of discovery" if the plaintiff's complaint fails to allege a violation of "clearly established law." *Mitchell*, 472 U.S. at 526. It is equally true, however, that ordinary pleading rules are not displaced simply because an individual raises the defense of qualified immunity. *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006)(holding that "a civil rights complaint filed under § 1983 against a government official need only satisfy the notice pleading standard of Rule 8(a), regardless of the availability of a qualified immunity defense"). Nassan cannot demand that the plaintiffs *prove* the truth of their allegations at the pleadings stage merely because he wishes to avoid the inconvenience of discovery, especially where there are witness statements that support the allegations. The second motion for reconsideration will be denied. (ECF No. 160.) The court will retain the information submitted for *in camera* review and will preserve those documents for purposes of appellate review. *United States v. Jackson*, 384 F.2d 825, 827 (3d Cir. 1967).

c.    Motion for order declaring allegations to be deemed admitted (ECF No. 141)

Nassan's remaining motion seeks a declaration that the plaintiffs admitted some of his "additional qualified immunity allegations" by failing to provide responses which conform to Federal Rule of Civil Procedure 8(b). Subsection (b) of Rule 8 provides:

> (b) Defenses; Admissions and Denials.
>    (1) *In General*. In responding to a pleading, a party must:
>       (A) state in short and plain terms its defenses to each claim asserted against it; and
>       (B) admit or deny the allegations asserted against it by an opposing party.
>    (2) *Denials—Responding to the Substance*. A denial must fairly respond to the substance of the allegation.
>    (3) *General and Specific Denials*. A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either

> specifically deny designated allegations or generally deny all except those specifically admitted.
>
> (4) *Denying Part of an Allegation*.  A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.
>
> (5) *Lacking Knowledge or Information*.  A party that lacks knowledge or  information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.
>
> (6) *Effect of Failing to Deny*.  An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.  If a responsive pleading is not required, an allegation is considered denied or avoided.

FED. R. CIV. P. 8(b).  Nassan claims that the plaintiffs have fully or partially admitted several of his "additional qualified immunity allegations" by failing to respond to such allegations in a manner which complies with Rule 8(b).  (ECF No. 141 ¶¶ 1-4.)

Having reviewed the plaintiffs' reply to Nassan's "additional qualified immunity allegations," the court concludes that paragraphs 1, 14, 15, 16, 18, 25, 27, 28 and 43 of the reply do not fully conform to the requirements of Rule 8(b).  (ECF No. 138 ¶¶ 1, 14, 15, 16, 18, 25, 27, 28 & 43.)  Nassan's arguments lack merit with respect to paragraphs 6, 7, 12, 19, 30, 31, 33, 34, 35 and 42.  (*Id.* ¶¶ 6, 7, 12, 19, 30, 31, 33, 34 & 35.)  A piecemeal analysis of the paragraphs contained in the answer is unnecessary, since Nassan's objections to the defective responses adequately highlight the steps that the plaintiffs must take to bring their pleadings into compliance with Rule 8(b).  (ECF No. 143.)  Nevertheless, the court will identify the deficiencies in some of the challenged paragraphs in order to delineate the applicable procedural requirements.  The court will also explain why Nassan's arguments concerning some of the paragraphs lack merit.

The following allegation and response are found in paragraph 14 of the relevant pleadings:

> **Allegation:** In light of Mr. Haniotakis's erratic driving behavior, Trooper Nassan formed the belief at that time that Mr. Haniotakis was impaired either by alcohol or drugs.

> **Plaintiffs' Reply:** This "qualified immunity allegation" does not establish that Defendant Nassan's fatal shooting of Mr. Haniotakis in the back was objectively reasonable as a matter of law or that Defendant Nassan is entitled to qualified immunity. Without waiving these objections, Plaintiffs deny that Nassan's brief observation of the Oldsmobile Bravada in the few seconds before Nassan elected to initiate a traffic stop could lead to a "conclusion" that the driver of the SUV was impaired by alcohol or drugs. Further, other than Nassan and Donnelly's own self-serving statements (contained within the joint "investigative" materials), there is no evidence that Mr. Haniotakis exhibited "erratic driving behavior" in the few seconds before Nassan elected to initiate a traffic stop.

(ECF No. 138 ¶ 14.) The plaintiffs' response to the allegation does not speak to whether Nassan *subjectively believed* that Haniotakis was impaired by alcohol or drugs. Instead, their contention that Nassan's "brief observation" of the situation *could* not have led to a definitive conclusion as to whether Haniotakis was impaired speaks only to the *objective reasonableness* of such a belief. The plaintiffs' denial, in this instance, does not "fairly respond to the substance of the allegation."[5] FED. R. CIV. P. 8(b)(2).

Paragraph 16 of Nassan's "additional qualified immunity allegations" states that "Trooper Nassan placed his vehicle in park, activated the emergency lights in his vehicle, and began exiting the vehicle to approach Mr. Haniotakis's SUV." (ECF No. 138 ¶ 16.) The plaintiffs respond by saying that they "cannot admit or deny the truth of these allegations" because "they have not been afforded any discovery in this matter." (*Id.*) "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must *so state*, and the *statement* has the effect of a denial." FED. R. CIV. P. 8(b)(5)(emphasis added). The

---

[5] This line of reasoning applies with equal force to paragraphs 1 and 15 of the plaintiffs' reply to Nassan's "additional qualified immunity allegations." (ECF No. 138 ¶¶ 1, 15.)

plaintiffs' response, in this instance, does not *state* that the plaintiffs "lack[] knowledge or information sufficient to form a belief about the truth of [the] allegation." (*Id.*)

The following statements can be found in paragraph 18 of the parties' pleadings:

> **Allegation:** Based on Mr. Haniotakis's actions and Trooper Nassan's training and experience, Trooper Nassan concluded that Mr. Haniotakis's flight from police likely meant that Mr. Haniotakis was impaired by alcohol or illegal drugs, that Mr. Haniotakis possessed alcohol or illegal drugs, that Mr. Haniotakis was driving with a suspended driver's license, or that he committed a crime whereby any additional traffic citations or arrests would result in additional punishment.

> **Plaintiffs' Reply:** This "qualified immunity allegation" does not establish that Defendant Nassan's fatal shooting of Mr. Haniotakis in the back was objectively reasonable as a matter of law or that Defendant Nassan is entitled to qualified immunity. Without waiving these objections, Plaintiffs aver that there is absolutely no evidence to support Nassan's speculative "conclusions" with regard to Mr. Haniotakis's alleged "flight from police," especially given the fact that neither Nassan nor Donnelly knew who was operating the Oldsmobile Bravada at the time of the incident, whether the driver of the Bravada had a valid driver's license, whether the driver of the Bravada had any prior criminal complaints against him, or whether the driver of the Bravada had consumed any drugs or alcohol. Moreover, there is absolutely no evidence that Mr. Haniotakis knew that the dark, unmarked vehicle that Nassan was driving was a police vehicle, that he observed any "emergency lights" activated on the unmarked vehicle, or that he was "attempting to flee from the officers."

(ECF No. 138 ¶ 18.) In responding to a pleading, a party must either "admit or deny the allegations asserted against it by an opposing party." FED. R. CIV. P. 8(b)(1)(B). The plaintiffs' response in paragraph 18 does neither. Under ordinary circumstances, an allegation "is admitted if a responsive pleading is required and the allegation is not denied." FED. R. CIV. P. 8(b)(6). The plaintiffs cannot *deny* Nassan's factual allegations merely by pointing out that he has "no

evidence" to support them.  *Westfield High School L.I.F.E. Club v. City of Westfield*, 249

F.Supp.2d 98, 102 n.4 (D.Mass. 2003).

Paragraph 25 of the "additional qualified immunity allegations" states that "Mr.

Haniotakis drove down Wharton Street, going at excessive rates of speed, with Trooper Nassan

following in pursuit behind."  (ECF No. 138 ¶ 25.)  While the plaintiffs deny that Haniotakis was

"going at excessive rates of speed," they do not specifically admit or deny that Haniotakis "drove

down Wharton Street . . . with Trooper Nassan following in pursuit behind."  (*Id.*)  "A party that

intends in good faith to deny only part of an allegation must admit the part that is true and deny

the rest."[6]  FED. R. CIV. P. 8(b)(4).

In order to address these deficiencies in the reply, the court will grant the plaintiffs leave

to amend their responses.[7]  *Victors v. Kronmiller*, 553 F.Supp.2d 533, 555 (D.Md. 2008).

Nassan will not be prejudiced by the amendment, since this case has not yet proceeded through

discovery.  *Djourabchi v. Self*, 240 F.R.D. 5, 12-22 (D.D.C. 2006).  After all, clearer responses to

Nassan's factual averments will provide the defendants with a fair opportunity to move for a

judgment on the pleadings.

Paragraph 28 of the answer is somewhat more problematic.  The following statements

can be found in that paragraph:

> **Allegation:** Wharton Street dead ends at 22nd Street.  Mr.
> Haniotakis, running the stop sign at that intersection, turned right,
> lost control of his SUV, went across the center lane, and struck a
> parked Toyota Corolla on the opposite side of 22nd Street.  True and
> correct copies of the photographs of the damaged Toyota Corolla are
> attached as Exhibits E, F, G, H, and I.

---

[6] This line of reasoning applies with equal force to paragraph 27 of the plaintiffs' reply to Nassan's "additional qualified immunity allegations."  (ECF No. 138 ¶ 27.)

[7] The plaintiffs specifically ask for leave to amend any pleadings deemed to be inadequate under Rule 8(b).  (ECF No. 149 ¶¶ 1-4.)

> **Plaintiffs' Reply:** This "qualified immunity allegation" does not establish that Defendant Nassan's fatal shooting of Mr. Haniotakis in the back was objectively reasonable as a matter of law or that Defendant Nassan is entitled to qualified immunity. Without waiving these objections, Plaintiffs deny that Mr. Haniotakis "ran" the stop sign at Wharton and 22nd Streets. Independent eyewitnesses have stated that Plaintiffs' decedent was not driving erratically prior to being fatally shot in the back by Defendants Nassan and Donnelly and that the Haniotakis vehicle was traveling at or below the posted speed limits when they observed it. As to the remaining allegations, Plaintiffs admit that witnesses have reported that there was physical contact between the Haniotakis vehicle and a parked, unoccupied vehicle on 22nd Street near Wharton; however, Plaintiffs aver that they have not been afforded any discovery and lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that Mr. Haniotakis "lost control" of his SUV and, therefore, deny the allegation. Nevertheless, as the Third Circuit stated in *Abraham v. Raso*, 183 F.3d 279, 293 (3rd Cir. 1999), "the fact that [the suspect] collided forcefully with a parked car (if it is a fact) does not by itself show that [he] posed a significant threat of death or serious physical injury to other people."

(ECF No. 138 ¶ 28.) Although the plaintiffs admitted that *witnesses reported* "physical contact" between Haniotakis' SUV and an unoccupied vehicle, they did not specifically admit the *existence* of such physical contact. As noted earlier, however, the plaintiffs directly admitted that a collision occurred when they filed their earlier responses. (ECF Nos. 106, 108, 133 ¶ 15.) The defendants would be prejudiced if the plaintiffs were permitted to retreat from their prior admission. Therefore, the court will deem admitted the fact that Haniotakis' SUV collided with a parked vehicle before the shooting, and the plaintiffs will not be granted leave to deny that fact. *David v. Crompton & Knowles Corp.*, 58 F.R.D. 444, 447-48 (E.D.Pa. 1973)(recognizing prejudice to an opposing party as a valid basis for denying a request for leave to amend a pleading). The plaintiffs remain free to amend their answer for purposes of clarification; provided, that they do not attempt to deny that the collision occurred.[8]

---

[8] The court notes that the plaintiffs, in their prior responses, specifically stated that they lacked knowledge or information sufficient to determine the *cause* of the collision. (ECF Nos. 106, 108, 113 ¶ 15.)

Rule 8(b)(3) plainly provides that a party intending to deny all allegations contained in a pleading "may do so by a general denial." FED. R. CIV. P. 8(b)(3). Despite Nassan's meritless argument to the contrary, the plaintiffs clearly *denied* the allegations contained in paragraphs 12, 19, 33, 34, 35 and 42 of the "additional qualified immunity allegations." (ECF No. 138 ¶¶ 33-35, 42.) The plaintiff's refutation of specific portions of those allegations does not negate the comprehensive effect of their general denials.

Nassan objects to the plaintiffs' invocation of Rule 8(b)(5) with respect to paragraphs 6, 7, 30 and 31. (ECF No. 143 at 9, 11-12, 17-18.) He contends that the plaintiffs cannot claim a lack of "knowledge or information sufficient to form a belief about the truth" of those allegations while "acknowledging" that the allegations are consistent with the "investigative materials" in their possession. (*Id.*) This argument is without merit. It is true that an averment denied pursuant to Rule 8(b)(5) will ordinarily "be deemed admitted when the matter is obviously one as to which [the denying party] has knowledge or information." *David*, 58 F.R.D. at 446. It is also true that the court ordered the defendants to provide the plaintiffs with "investigative files" for the specific purpose of giving them a meaningful opportunity to respond to Nassan's allegations. (ECF No. 125 at 30-31.) Even if information can be found in the "investigative files" does not mean that the plaintiffs are bound to accept uncritically that information. The plaintiffs have not yet been afforded the opportunity to engage in discovery. They are not required to *admit* the truth of every assertion found in the "investigative files" provided *by the defendants*. If the plaintiffs intend to reserve the right to challenge the *authenticity* of any exhibits submitted by the defendants until after discovery concerning authenticity, they should do so explicitly so that the record is clear.[9] (ECF No. 141 ¶ 6.) Moreover, if the plaintiffs

---

[9] The court expresses no opinion about whether (or to what extent) any exhibits contained in the record can be properly considered in determining whether any or all of the defendants are entitled to qualified immunity at the

"lack[] knowledge or information sufficient to form a belief" about the authenticity of an exhibit referenced in Nassan's pleadings, they should "so state." FED. R. CIV. P. 8(b)(5). The court will *not* consider a concession as to authenticity to be an admission of the *truthfulness* of an exhibit's *contents*. (*Id.* ¶ 7.) The plaintiffs are not required to specifically admit or deny the factual assertions contained in Nassan's exhibits. They are only required to respond to the averments found in Nassan's *pleadings. United States v. Erie Cnty.*, 724 F.Supp.2d 357, 367 (W.D. N.Y. 2010).

The court will grant Nassan's motion to extend the March 16, 2011 deadline for filing a motion for judgment on the pleadings. (ECF No. 141 ¶ 10.) Nassan's motion for an order declaring "certain allegations set forth" in his answer to be deemed admitted will be granted only with respect to the existence of the collision referenced in paragraph 28. (ECF No. 138 ¶ 28.) The motion will be denied in all other respects.

## V.    Conclusion

Nassan's first motion for reconsideration and second motion for sanctions will be denied. (ECF Nos. 122, 144.) The second motion for reconsideration will be granted to the extent that the court will preserve the materials submitted for *in camera* review and will be denied in all other respects. (ECF No. 160.) The motion for an order declaring "certain allegations set forth" in Nassan's answer to be deemed admitted will be granted only to the extent that it seeks an extension of the deadline for the filing of a motion for judgment on the pleadings, granted *in part* with respect to paragraph 28 of Nassan's "additional qualified immunity allegations" (and the plaintiffs' responses thereto), and denied in all other respects. (ECF No. 141.) In accordance

---

pleadings stage. (ECF No. 161 at 1-2, n.1.) Nassan's argument concerning paragraph 43 appears to concern only the plaintiffs' failure to acknowledge the authenticity of photographs depicting the aftermath of the shooting. (ECF No. 143 at 19-20.)

with Federal Rule of Civil Procedure 15(a)(2), the plaintiffs will be granted leave to amend their responses to Nassan's "additional qualified immunity allegations."[10]

## VI. Order

**AND NOW**  this 25th  day of August 2011,

IT IS HEREBY ORDERED that Defendant Samuel Nassan's first motion for reconsideration and second motion for sanctions (*ECF Nos. 122 & 144*) are **DENIED**; that his second motion for reconsideration (*ECF No. 160*) is **GRANTED** to the extent that it requests that the materials submitted for *in camera* review be preserved and **DENIED** in all other respects; and that his motion for an order declaring "certain allegations set forth" in his answer to be deemed admitted (*ECF No. 141*) is **GRANTED** to the extent that it seeks an extension of the deadline for the filing of motions for judgment on the pleadings, **GRANTED IN PART** with respect to paragraph 28 of the "additional qualified immunity allegations" (and the responses thereto), and **DENIED** in all other respects.

IT IS FURTHER ORDERED that the Plaintiffs are **GRANTED** leave to amend their responses to Defendant Samuel Nassan's "additional qualified immunity allegations" for the purpose of bringing them into conformity with Federal Rule of Civil Procedure 8(b).

An amended reply must be filed no later than September 14, 2011.  Any motion for judgment on the pleadings must be filed no later than twenty days thereafter.

---

[10] The court's identification of specific deficiencies in the plaintiffs' reply to Nassan's "additional qualified immunity allegations" should not be construed to mean that no other deficiencies exist.  The plaintiffs are ultimately responsible for ensuring that their pleadings conform to Rule 8(b).  They remain free to amend paragraphs that are not specifically mentioned in this opinion.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated:  August 25, 2011